[Crim. No. 2145.  In Bank.—May 1, 1918.]

## In the Matter of the Application of EBAN MANA for a Writ of Habeas Corpus.

JURY—RIGHT TO TRIAL BY JURY—CONSTITUTIONAL LAW—COMMON LAW. Constitutional provisions guaranteeing the right to a trial by jury establish the right to a trial by jury as known at the common law.

ID.—QUALIFICATIONS OF JURORS—LEGISLATIVE POWER TO DETERMINE.— The qualifications of the jury is a matter subject to legislative control, and the legislature may fix qualifications differing from those of the common law.

ID.—CRIMINAL LAW — CONVICTION BY JURY CONSISTING IN PART OF WOMEN.—The act of the legislature authorizing women to sit as jurors is constitutional, and it is no ground for a release from custody that one was convicted of felony by a jury consisting in part of women.

APPLICATION for Writ of Habeas Corpus.

The facts are stated in the opinion of the court.

Feliz & White, for Petitioner.

U. S. Webb, Attorney-General, for Respondent.

Gail Laughlin, for Various Organizations of Women.

WILBUR, J.—Petitioner, convicted of a felony by a jury consisting in part of women, seeks release from custody on the ground that the act of the legislature authorizing women to sit as jurors is unconstitutional. The right to a trial by a jury is provided for in article I, section 7, of the constitution adopted by the people of the state of California in May, 1879, as follows:

"Sec. 7. The right of trial by jury shall be secured to all, and remain inviolate; but in civil actions three-fourths of the jury may render a verdict. A trial by jury may be waived in all criminal cases not amounting to felony, by the consent of both parties, expressed in open court, and in civil actions by the consent of the parties, signified in such manner as may be prescribed by law. In civil actions and cases of misdemeanor, the jury may consist of twelve, or of any number less than twelve upon which the parties may agree in open court."

The petitioner claims that the word "men" should be inserted by proper construction in the constitution, so that the constitution would in effect read: "The right of trial by a jury of twelve men shall be secured to all," etc. This contention is based upon the proposition that when the constitution provides for a trial by a jury it, by necessary inference, provides for the jury as known at the common law (*People* v. *Powell*, 87 Cal. 348, [11 L. R. A. 75, 25 Pac. 481]), and that as juries of men were provided for by the common law, the constitution must be thus construed. Two questions seem to be thoroughly settled by the unbroken line of decisions in all the states: First, that constitutional provisions guaranteeing the right to a trial by jury establish the right to a trial by a jury as known at common law; second, that the qualifications of the jury is a matter subject to legislative control, and that even though such qualifications may differ from those at common law, such legislation is nevertheless a valid exercise of legislative power. (24 Cyc. 187; *People* v. *Powell, supra; People* v. *Chin Mook,* 51 Cal. 597.)

At the time of the adoption of our constitution (1879) the fourteenth amendment of the constitution of the United States provided that, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to

any person within its jurisdiction the equal protection of the laws.'' By this amendment state laws and state constitutions were modified or abridged so far as necessary to conform to the rights and privileges thus created. In interpreting the right to a trial by jury as guaranteed by our constitution, we must, therefore, look not alone to the common law, but also to this amendment so far as it affects the right to a trial by jury. The supreme court of the United States in construing the effect of this constitutional amendment upon the right of a colored man to a trial by jury in West Virginia (*Strauder* v. *West Virginia*, 100 U. S. 303, [25 L. Ed. 664]), said: ''The very idea of a jury is a body of men composed of the peers or equals of the person whose rights it is selected or summoned to determine; that is, of his neighbors, fellows, associates, *persons having the same legal status in society as that which he holds.''* (Italics ours.) It was, therefore, held that to try a negro before a jury from which his race was excluded by law was a denial of his right to a trial by jury as guaranteed by the constitution of West Virginia, for the reason that it deprived him of a trial by a jury composed of his ''neighbors, fellows, associates, *persons having the same legal status in society as that which he holds.''* In deciding that question the court added: ''We do not say that, within the limits within which it is not excluded by the amendment a state may not prescribe the *qualifications of its jurors* (italics ours), and in so doing may discriminate. It may confine the selection to males, to freeholders, to citizens, to persons within certain ages, or to persons having educational qualifications. We do not believe the fourteenth amendment was ever intended to prohibit this.'' It will be observed, then, that the supreme court of the United States, in determining the rights of citizens of the United States to a jury trial under the fourteenth amendment, bases its conclusion as to the right of a state to discriminate against female citizens of the United States upon the ground of the disqualification of females as jurors.

Our constitution also expressly provides (article XX, section 18) : ''No person shall, on account of sex, be disqualified from entering upon or pursuing any lawful business, vocation, or profession.'' And while jury service is neither a ''business, vocation, or profession,'' the constitution recognizes the capacity of women to enter upon any ''lawful business, vocation, or profession.'' By an amendment to our con-

stitution, October 10, 1911 (article II, section 1), women were given the right to vote and hold office. If the contention of the petitioner is well grounded, we would then have a situation where a woman on trial for a crime might be brought to trial before a woman judge, prosecuted by a woman district attorney, defended by a woman lawyer, brought in court by a woman bailiff, and yet forced to a trial before a jury of men, because men only were considered as eligible for jury duty at common law. It would seem that the inferences to be derived from so radical an amendment of the constitution are quite as strong as those to be derived from the use of the term "trial by jury."

The legislature of the state in providing that a woman might act as a juror evidently believed that there was no longer any necessity of discriminating against her as a citizen of the United States because she was disqualified. The constitution having recognized her as in all respects the equal of man, the legislature was justified in doing away with the discrimination which had. theretofore existed against her in the matter of jury service. We do not hold that the fourteenth amendment to the federal constitution, or the woman suffrage amendment to the constitution of this state, were of themselves sufficient to entitle women to act as jurors, although this question has been seriously raised and discussed, but not decided, by the supreme court of Wyoming in *McKinney* v. *State*, 3 Wyo. 719, [16 L. R. A. 710, 30 Pac. 293]. We do. hold, however, that this amendment points so clearly to the matter of sex as a question of qualification that the legislature was amply justified in dealing with the matter as such.

Writ discharged. Petitioner remanded.

Richards, J., *pro tem.*, Sloss, J., Melvin, J., Victor E. Shaw, J., *pro tem.*, and Angellotti, C. J., concurred.