Filed 8/20/14  P. v. Rincon CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> VANESSA RINCON, <br><br> Defendant and Appellant. | F064184 <br><br> (Super. Ct. No. F10902302) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  W. Kent Hamlin, Judge.

Lynne S. Coffin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Peter H. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Vanessa Rincon tried to kill her young son with a steak knife while she was high on methamphetamine.  The child survived the attack despite sustaining 25 stab wounds and being dropped down a flight of stairs.  Rincon was convicted by jury of premeditated

attempted murder (Pen. Code, §§ 664, 187) and willful infliction of corporal injury upon a child (Pen. Code § 273d, subd. (a)).[1]

On appeal, Rincon claims there was insufficient evidence to support (1) the attempted murder conviction and (2) the jury's finding that she was not legally insane at the time of the offense. Both assertions of error rest upon poorly developed arguments which are untenable under the controlling standard of review. We therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying incident occurred at an apartment complex in Fresno where Rincon lived with her then three-year-old son and two-month-old daughter. Acting under the influence of methamphetamine, Rincon repeatedly stabbed her son in the head, face, chest, back, and abdomen. The commotion drew the attention of Rincon's neighbors, one of whom saw Rincon exit her apartment and toss the injured child down into the stairwell between the first and second floors of the building.

Eyewitnesses described Rincon as irate and hysterical, babbling loudly to a growing crowd of people as police and paramedics arrived at the scene. Amid her ramblings, Rincon said, "I did it. I stabbed him. He is the devil…. Kill me. I stabbed my baby. Just give me the lethal injection." Police had to restrain Rincon to prevent her from interfering with the paramedics as they tended to her son. At that point she screamed, "Don't help him. I want him to die. He's a bad kid…. Don't revive him. Let him die."

Crime scene technicians took pictures of what appeared to be bloodstains on the carpet in the front room of Rincon's apartment. A broken steak knife was found on the floor next to the stains. The blade, which measured approximately four inches, had separated from the handle, and both pieces of the knife appeared to be covered in blood.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2.

All told, Rincon's son was stabbed nine times in the head and sixteen times in the face and body. This resulted in a host of injuries, including punctured lungs and a severely lacerated kidney. The boy also sustained an orbital fracture (a break in the bone around the eye socket) and was treated for a possible second fracture at the base of his skull.

The Fresno County District Attorney charged Rincon by information with one count of attempted willful, deliberate, and premeditated murder, and one count of corporal injury upon a child. Both counts included enhancement allegations for personal infliction of great bodily injury on a child under the age of five years (§ 12022.7, subd. (d)) and personal use of a deadly or dangerous weapon (§ 12022, subd. (b)(1)). Rincon answered the charges by entering a general plea of not guilty and a special plea of not guilty by reason of insanity. At the request of Rincon's trial attorney, all matters in dispute were tried before a jury in a "unified" proceeding without bifurcation of the insanity issue.[2]

---

[2] The trial court may have erred by allowing this unorthodox procedure. (See *People v. Elmore* (2014) 59 Cal.4th 121, 140-141.) Section 1026 provides, in pertinent part, "When a defendant pleads not guilty by reason of insanity, and also joins with it another plea or pleas, the defendant shall first be tried as if only such other plea or pleas had been entered, and in that trial the defendant shall be conclusively presumed to have been sane at the time the offense is alleged to have been committed. If the jury shall find the defendant guilty … then the question whether the defendant was sane or insane at the time the offense was committed shall be promptly tried, either before the same jury or before a new jury in the discretion of the court…." (§ 1206, subd. (a).) Earlier cases hold that a defendant may waive bifurcation when a trial judge sits as the trier of fact during the guilt phase, but those authorities leave open the question of whether the same is true for a jury trial. (E.g., *People v. Dessauer* (1952) 38 Cal.2d 547, 554 ["At least in a case tried by the court without a jury[,] the right to have guilt and insanity separately tried may be waived."].) That being said, Rincon does not allege procedural error in her briefs, and in any event the doctrine of invited error would preclude reversal on such grounds. (See *People v. Bailey* (2012) 54 Cal.4th 740, 753 ["'The doctrine of invited error is designed to prevent an accused from gaining a reversal on appeal because of an error made by the trial court at his behest.'"].)

At trial, the prosecution's case-in-chief included eyewitness testimony from Rincon's neighbors and from law enforcement officers who were involved in the case. The nature and extent of the victim's injuries was established through the testimony of a physician who oversaw the child's hospital care following the incident. Photographs and physical items collected at the crime scene were also admitted into evidence.

The defense case focused on Rincon's state of mind at the time of the offenses. Several of her friends and relatives testified that she had always been a good mother and, as far as they knew, had no history of mental problems or illegal drug use. Other defense witnesses acknowledged Rincon's prior drug use, and claimed that she had shown signs of depression and unusual behavior in the days preceding the attack on her son.

Dr. Thomas Callahan, a psychiatrist, was the first medical expert called by the defense to address the issue of Rincon's sanity. Dr. Callahan had interviewed Rincon at the Fresno County Jail approximately one year after the subject incident occurred. Based on his personal observations and a review of the relevant police reports, Dr. Callahan made an initial diagnosis of "brief psychotic disorder in remission." The expert believed Rincon had experienced a psychotic episode when she harmed her son, but found no manifestations of a psychotic disorder when he interviewed her. Dr. Callahan's initial findings did not specify the cause of Rincon's psychosis.

To the apparent surprise of defense counsel, Dr. Callahan had updated and revised his original conclusions by the time of trial. On the witness stand, he opined that Rincon had a "substance induced psychotic disorder," caused by the use of amphetamines, "with delusions in remission." In other words, he believed the defendant was psychotic at the time of the offenses "because of an intoxication of amphetamines." Dr. Callahan's revised diagnosis followed his review of documents concerning Rincon's substance abuse and her "socio-economic history," which were provided to him by Rincon's attorney subsequent to his initial assessment.

4.

The second defense expert was Dr. James Missett, also a psychiatrist. Dr. Missett performed a psychiatric evaluation of Rincon, reviewed her medical records from before and after the incident, and watched video footage of a police interview conducted on the day of her arrest. The video was shown to the jury in conjunction with Dr. Missett's testimony.[3]

Dr. Missett concluded that Rincon had been suffering from a psychotic disorder at the time of the incident which was unlikely to have been caused by her use of methamphetamine. He believed Rincon's psychosis was probably attributable to a variety of different "stressors" in her life, including financial issues (she was unemployed and on welfare); the fact that she was raising two small children conceived by different fathers, neither of whom were involved in their lives; and her strained relationships with certain family members. Ingesting methamphetamine effected Rincon, but in Dr. Missett's opinion, "it shouldn't have made her psychotic."

A third psychiatrist, Dr. Howard Terrell, testified for the prosecution on rebuttal. Like the other experts, Dr. Terrell met with Rincon in person to perform a psychiatric evaluation and also reviewed the available documentation related to her case. He was firmly of the belief that Rincon's actions on the day in question occurred while she was in a state of methamphetamine-induced psychosis. Citing toxicology reports in Rincon's medical records, Dr. Terrell noted that the levels of methamphetamine found in her blood on that date were extremely high at 0.29 milligrams per liter (mg/L). He explained that methamphetamine produces a psychoactive effect at levels between 0.05 mg/L and

---

[3] The video was recorded approximately two hours after Rincon stabbed her son. It shows Rincon's demeanor vacillate between calm, friendly conversation and manic expressions of fear and grief. She admits to taking "a couple hits" of methamphetamine earlier in the day, stabbing her son with a knife, and throwing him down a set of stairs. Rincon also makes a number of bizarre references to God and the Bible, talks about slaughtering "the lamb" and "the enemy," and at times seems to have difficulty focusing on the questions asked by the detective conducting the interview.

0.1 mg/L, and the potentially toxic range begins at 0.225 mg/L. Toxic levels indicate a much higher likelihood of irrational, bizarre, and psychotic behavior.

Dr. Terrell's opinions differed significantly from those of Dr. Missett with respect to the cause of Rincon's psychotic episode. Defense counsel alluded to this on cross-examination by asking Dr. Terrell if experts often hold different opinions about the same subject matter. The witness replied, "They certainly can, depending on the complexity." Rincon's attorney then asked, "[I]n regards to this particular case, did you find it very complex?" Dr. Terrell replied, "Not really. I think it was about as straight-forward a case of methamphetamine-induced psychosis as I've ever seen in my life, so no." Undeterred, counsel asked the witness if he believed there were other possible explanations for Rincon's behavior towards her son. Dr. Terrell responded, "I'd say most anything's possible, but is it probable that there's a different reason other than the methamphetamine-induced psychosis? Probably not. I think it's very unlikely it would be anything else that could legitimately explain it."

Rincon was convicted as charged and the jury returned true findings on the enhancement allegations. On the question of insanity, the jurors found the defendant was not legally insane when she committed her crimes. The trial court sentenced Rincon to life in prison with the possibility of parole based on the conviction for attempted murder, plus six years for the great bodily injury enhancement and one additional year for the deadly weapon enhancement. In addition, though stayed pursuant to section 654, an aggregate term of 13 years in prison was imposed for the commission of corporate injury upon a child (6 years) with great bodily injury (6 years) and personal use of a dangerous or deadly weapon (1 year). This timely appeal followed.

## DISCUSSION

**Standard of Review**

"In reviewing a criminal conviction challenged as lacking evidentiary support, "'the court must review the whole record in the light most favorable to the judgment

6.

below to determine whether it discloses substantial evidence - that is, evidence which is reasonable, credible, and of solid value - such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.”’” (*People v. Streeter* (2012) 54 Cal.4th 205, 241.) A jury’s factual findings are reviewed under the same standard. (*People v. Stanley* (1995) 10 Cal.4th 764, 792-793.) “Even when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the standard is sufficient to uphold the finding.” (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052.)

Reversal is not warranted unless the evidence is insufficient to support the verdict under any hypothesis. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) The appellate court cannot reweigh the evidence, reinterpret the evidence, or substitute its judgment for that of the jury. (*People v. Baker* (2005) 126 Cal.App.4th 463, 469.) “If the circumstances reasonably justify the jury’s findings, the reviewing court may not reverse the judgment merely because it believes that the circumstances might also support a contrary finding.” (*People v. Ceja* (1993) 4 Cal.4th 1134, 1139.)

**Attempted Murder**

“Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.” (*People v. Ervine* (2009) 47 Cal.4th 745, 785.) Rincon claims the evidence at trial was insufficient to establish that she took a “direct step” towards killing her son, but offers little in the way of substantive argument to support this contention. Her position appears to be based on the fact that she tossed her child into an open stairwell after stabbing him. She reasons that such conduct “placed her son in a position that made him more, not less, accessible to others [who might have rendered assistance], taking him from the seclusion and isolation of her apartment to the visibility of the outside stairway.” We are not persuaded.

“Mental state and intent are rarely susceptible of direct proof and must therefore be proven circumstantially.” (*People v. Thomas* (2011) 52 Cal.4th 336, 355.) The intent

to kill may be inferred from a defendant's acts and the circumstances of the crime. (*People v. Avila* (2009) 46 Cal.4th 680, 701 (*Avila*).) In *Avila*, *supra*, the California Supreme Court affirmed a conviction for attempted murder under circumstances where the defendant had stabbed at a trapped and unarmed victim more than 20 times using a knife with a blade that was approximately six inches long. (*Avila*, *supra*, 46 Cal.4th at pp. 686, 701.) The defendant succeeded in cutting the victim's leg and slicing his bicep in half. (*Id*. at p. 686.) On these basic facts, the high court held: "This evidence alone is substantial evidence of defendant's intent to kill." (*Id*. at pp. 701-702.)

The evidence which showed that Rincon stabbed her defenseless child 25 times was sufficient to establish her intent to kill, and also constituted proof that she took a "direct step" towards accomplishing that goal. (*Avila*, *supra*, 46 Cal.4th at pp. 701-702.) Placing the injured victim in a location where he was likely to receive assistance from others did not negate the elements of the crime. (See CALCRIM No. 600 ["A person who attempts to commit murder is guilty of attempted murder even if, after taking a direct step toward killing, he or she abandons further efforts to complete the crime…."].) The jury could have further inferred Rincon's intent to kill based on her attempt to disrupt the paramedics' efforts to save her son's life, and the incriminating statements she made at that time ("Don't help him. I want him to die.").

Rincon additionally argues that the "element of preparation" was missing. We assume she is speaking to the issue of premeditation. Planning and preparation are not distinct elements of attempted murder, but the punishment for that offense increases if it is shown that the attempt to kill was committed with premeditation and deliberation, as the jury found in this case. (§ 664, subd. (a); *People v. Gonzalez* (2012) 54 Cal.4th 643, 654.)

Attempted murder is premeditated and deliberate if it occurs "as the result of reflection rather than unconsidered or rash impulse." (*People v. Nelson* (2011) 51 Cal.4th 198, 213.) "However, the requisite reflection need not span a specific or extended period

8.

of time. Thoughts may follow each other with great rapidity, and cold, calculated judgment may be arrived at quickly." (*Ibid*.)

In her interview with police, Rincon twice confirmed that she retrieved a steak knife from her kitchen and used it to stab her son. Physical evidence indicated that the offense occurred in a different room of her apartment, thus supporting the conclusion that she had time to consider her behavior before attempting to kill the victim. There was additional time for reflection during the interval between the first and twenty-fifth stabbing.

One of the police officers who spoke with Rincon at the crime scene testified to hearing her say, "I called my dad and told him what I was going to do." Rincon's father and stepfather both acknowledged receiving phone calls from her earlier in the day, and her stepfather admitted that she had wanted him to pick her son up from the apartment because he was misbehaving. Although neither relative acknowledged Rincon had given them advance notice of her intent to harm the boy, this evidence was probative of appellant's premeditation and deliberation. Accordingly, and for all of the reasons stated above, we conclude the jury's findings were supported by substantial evidence.

**Insanity**

A defendant who proceeds at trial on a plea of not guilty by reason of insanity has the burden of proving, by a preponderance of the evidence, that he or she was legally insane at the time of the underlying offense. (§ 25, subd. (b); *People v. Hernandez* (2000) 22 Cal.4th 512, 521 (*Hernandez*).) "Insanity, under California law, means that at the time the offense was committed, the defendant was incapable of knowing or understanding the nature of his act or of distinguishing right from wrong." (*Hernandez*, *supra*, 22 Cal.4th at p. 520.) However, insanity cannot be based upon the "addiction to, or abuse of, intoxicating substances." (§ 29.8.) It follows that while Rincon may have experienced a psychotic episode, the jury was entitled to find her legally sane if it

believed her psychosis was caused by the voluntary ingestion of intoxicants. (§ 29.8; *People v. Robinson* (1999) 72 Cal.App.4th 421, 427.)

"Because the burden was on the defense to show by a preponderance of the evidence that appellant was insane, before we can overturn the trier of fact's finding to the contrary, we must find as a matter of law that the [jury] could not reasonably reject the evidence of insanity." (*People v. Skinner* (1986) 185 Cal.App.3d 1050, 1059.) We cannot reach such a conclusion given the expert testimony provided by Drs. Callahan and Terrell. Both experts were of the opinion that Rincon experienced methamphetamine-induced psychosis, and provided reasoned explanations for their findings. Dr. Terrell opined that it was not only improbable, but "very unlikely" that her wrongful behavior was attributable to anything other than the use of methamphetamine. The jury's finding that Rincon was not legally insane at the time of the offense was thus supported by substantial evidence. It is not our role to second-guess that determination.

## DISPOSITION

The judgment is affirmed.


_____

Gomes, J.

WE CONCUR:


_____

Hill, P.J.


_____

Cornell, J.

10.