Filed 12/29/15  P. v. Whittaker CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>DWAYNE WHITTAKER,<br><br>　　　Defendant and Appellant. | A141932<br><br>(City & County of San Francisco Super. Ct. Nos. SCN215200, SCN221056) |

　　　A jury convicted defendant Dwayne Whittaker of multiple crimes committed against four separate victims: attempted residential robbery (Pen. Code, §§ 211, 664),[1] two counts of residential burglary committed while a person was home (§§ 459, 667.5, subd. (c)(21)), two counts of assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(1)), inflicting injury on an elder with force likely to cause great bodily injury with personal infliction of great bodily injury (§§ 368, subd. (b)(1), 12022.7, subd. (c)), and possession of stolen property (§ 496, subd. (a)). The court found that defendant has three prior robbery convictions. The court sentenced him to five consecutive indeterminate life terms under the Three Strikes law (§§ 667, subd. (e)(2), 1170.12, subd. (c)(2)) and additional enhancements, with the court expressing its intention that "defendant shall serve a sentence of life in prison with an indeterminate term of 190 years minimum custody plus a determinate term of 249 years."

---

[1] All further section references are to the Penal Code except as noted.

1

Defendant appeals and asserts three claims: (1) the trial court abused its discretion in denying his motion to continue the trial; (2) the trial court erred in directing a verdict on his plea of not guilty by reason of insanity; and (3) his sentence of consecutive life terms is unconstitutional. We shall affirm the judgment.

## Trial Court Proceedings[2]

Defendant was arrested in August 2008 and charged with robbery and assault. The public defender appointed to represent defendant declared a doubt as to defendant's competency, and the court suspended criminal proceedings and ordered psychiatric assessments. Two psychiatrists concluded that defendant was incompetent to stand trial due to possible schizophrenia but expressed doubt as to whether defendant was feigning mental illness in whole or in part. In January 2009, the court found defendant not competent to stand trial and committed him to Napa State Hospital for treatment.

In September 2011, the medical director of Napa State Hospital certified that defendant was ready to stand trial. A psychiatrist at the hospital prepared an extensive report in which he concluded that defendant does not suffer from schizophrenia and attributed defendant's prior reports of hallucinations to drug-induced psychosis. The psychiatrist also concluded that defendant "malingered psychotic symptoms as opposed to have genuinely experienced them." A contested competency hearing was held in March 2013 after multiple continuances, many of which were at defense counsel's request. In April 2013, the court ruled defendant competent and reinstated criminal proceedings.

Indictments had been filed on most charges but some charges were made in a felony complaint. A preliminary hearing on those charges was held in October 2013 and defendant pled not guilty to all charges at his arraignment later that month. A consolidated amended information was filed in January 2014.

---

[2] We focus on procedural matters. Defendant does not contest the sufficiency of the evidence to support the jury's verdict and, thus, we need not summarize the extensive trial evidence presented in support of the verdict.

Trial proceedings began on February 3, 2014, with the consideration of various motions. Jury selection was set for February 5. On that day, defendant asked to change his plea of not guilty to add an alternate plea of not guilty by reason of insanity. The court granted the request and jury selection began with a review of requests to be excused from jury service due to hardship.

On February 6, 2014, defendant moved to continue the trial. Defense counsel said he was "surprised" by defendant's decision to plead insanity and needed additional time to prepare the defense. Counsel stated he would have requested use of a juror questionnaire had he known there would be a sanity phase of trial. While acknowledging that he had reviewed "a number" of defendant's medical records, counsel said he needed time to compile mental health records, retain experts, and interview lay witnesses. Counsel asked to continue the trial in its entirety because he "would be tailoring the guilt phase so that it dovetailed with [his] theory and strategy of the insanity phase." The prosecution opposed continuance, arguing, among other things, that a continuance would burden witnesses, many elderly, who had waited over five years for resolution of the charges.

The court denied the motion. The court found that "[n]othing has changed in regard to the guilt or innocence phase of trial" to warrant delaying the entire trial. The case was being tried in phases and the sanity phase of trial would not begin for a month or more, after the guilt phase and a long recess, thus allowing sufficient time for preparation. The court also noted that defense counsel was familiar with defendant's mental health history, as he had represented defendant at the March 2013 competency hearing, and already had in his possession evidence relevant to an insanity defense. The court pointed out that defense counsel had investigators and other attorneys in the public defender's office who could assist with preparation of an insanity defense while the guilt phase proceeded, and that there would be time during the long recess between trial phases when counsel could turn his entire attention to the insanity defense. The court offered to accommodate counsel's wish for a juror questionnaire, finding sufficient time to utilize a questionnaire as voir dire had not yet started.

3

A juror questionnaire addressing mental health issues was prepared and submitted to prospective jurors. The prosecutor and defense counsel were given three days over a weekend to review the responses to the questionnaire before voir dire began on Monday, February 10, 2015. Jury selection was completed on February 13 and the presentation of evidence in the guilt phase of trial began that afternoon. Jury deliberations began on February 26 and concluded the following day, February 27. The jury found defendant guilty of seven of the 11 counts alleged. The court recessed the proceedings for three weeks, until March 24, when the sanity phase of trial was set to begin.

Prior to the start of the sanity phase of trial, two psychiatrists appointed to evaluate defendant submitted reports concluding that defendant was not legally insane at the time of the crimes. One expert opined that defendant "in all likelihood has been malingering" and, even if defendant had a genuine mental disorder, he possessed the ability to understand the nature of his acts and to know right from wrong. The other expert "saw no genuine signs of psychosis," observed defendant feign hallucinations, and concluded that defendant was manufacturing or, at the least, exaggerating symptoms of mental illness. The psychiatrist reported: "I believe that [defendant] has become the proverbial child who cries wolf. I just don't believe him."

Defense counsel informed the court he had no evidence to offer in support of the insanity plea but that defendant would not agree to withdraw his plea. The sanity phase of trial commenced and defense counsel stated he had no opening statement or evidence to present. The trial court directed verdict against defendant and dismissed the insanity plea.

**Discussion**

As noted above, defendant makes three claims on appeal: (1) the trial court abused its discretion in denying his motion to continue the trial thereby depriving him of due process, effective assistance of counsel, and the ability to present a defense; (2) the trial court denied his due process and jury trial rights by directing a verdict at the sanity phase of trial because only a jury is empowered to rule on the factual issue of sanity; and (3) his sentence of consecutive life terms is cruel and unusual punishment and violates due process.

4

1. *Denial of motion to continue the trial.*

A continuance in a criminal case may be granted only for good cause. (§ 1050, subd. (e).) "Whether good cause exists is a question for the trial court's discretion. [Citation.] The court must consider ' " 'not only the benefit which the moving party anticipates but also the likelihood that such benefit will result, the burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion.' " ' [Citation.] While a showing of good cause requires that both counsel and the defendant demonstrate they have prepared for trial with due diligence [citation], the trial court may not exercise its discretion 'so as to deprive the defendant or his attorney of a reasonable opportunity to prepare.' [Citation.] [¶] A reviewing court considers the circumstances of each case and the reasons presented for the request to determine whether a trial court's denial of a continuance was so arbitrary as to deny due process. [Citation.] Absent a showing of an abuse of discretion and prejudice, the trial court's denial does not warrant reversal." (*People v. Doolin* (2009) 45 Cal.4th 390, 450.)

The trial court reasonably found there was no good cause to further delay trial under the circumstances presented here. As the court rightly observed, "[n]othing changed in regard to the guilt or innocence phase of this trial" by the late addition of an insanity plea. Jury selection was the only matter potentially impacted because the same jury would decide, in separate phases of trial, both guilt and sanity. The court addressed defense counsel's concern in this regard by granting counsel's request for a juror questionnaire on mental health issues and allowing sufficient time to review the completed questionnaires before voir dire commenced. The change of plea did, of course, place additional demands on defense counsel. But the trial court reasonably found that the insanity defense could be prepared during the guilt phase of trial and the three-week recess between the guilt and sanity phases of trial. Defense counsel was familiar with defendant's mental health history as he had represented defendant at a competency hearing months earlier. Competency and legal insanity present distinct issues but both are

5

based on defendant's mental state and psychiatric evidence. Defense counsel was not "starting from scratch," as the prosecutor rightly noted. Counsel had in his possession extensive mental health records and psychiatric reports relevant to an insanity defense. The trial court acted reasonably in denying the continuance in favor of a bifurcated trial schedule that allotted time in between trial phases for preparation of the defense.

2. *Directed verdict on the insanity plea.*

A defendant may claim legal insanity as an affirmative defense to a criminal charge. (*People v. Hernandez* (2000) 22 Cal.4th 512, 522; § 25, subd. (b).) "It is fundamental to our system of jurisprudence that a person cannot be convicted for acts performed while insane." (*People v. Kelly* (1973) 10 Cal.3d 565, 574.) When, as here, a defendant enters a plea of not guilty by reason of insanity and joins with it a plea of not guilty, he or she must be tried first as to guilt; only if the defendant is found guilty does the sanity phase of the trial begin. (§ 1026, subd. (a).) In the sanity phase, the defendant bears the burden of proof by a preponderance of the evidence. (*Hernandez*, *supra*, at p. 521; § 25, subd. (b); Evid. Code, § 522.)

At the start of the sanity phase of trial, defense counsel said he would not make an opening statement and had no evidence to present. Defendant contends that in directing a verdict and dismissing the insanity plea, the trial court denied his due process and jury trial rights because only the jury is empowered to rule on the factual issue of his sanity. The Attorney General argues, as a preliminary matter, that defendant has forfeited the issues by failing to raise them in the trial court, citing *People v. Stowell* (2003) 31 Cal.4th 1107, 1114 and *People v. Garceau* (1993) 6 Cal.4th 140, 173. We do not need to resolve this issue because in all events defendant's contentions lack merit.

Established law recognizes a trial court's discretionary authority to direct a verdict against a defendant in the trial of an insanity defense. *People v. Ceja* (2003) 106 Cal.App.4th 1071, 1085-1089, held that trial courts have the inherent power to remove an insanity defense from the jury when there is no evidence to support it and found no constitutional infirmity in the court doing so. In reaching this conclusion, the *Ceja* court

6

noted that "a plea of not guilty by reason of insanity is a 'special plea' with the burden of proof resting on the defendant." (*Id.* at p. 1085.) Because the plea does not involve the defendant's guilt of the underlying crimes, the defendant has no presumption of innocence to aid him and therefore must prove the defense. (*Id.* at pp. 1085-1086.) If the defendant fails to offer sufficient evidence to do so, the court may remove the issue of sanity from the jury. (*Id.* at p. 1089.) Numerous state and federal cases are in accord. (*People v. Blakely* (2014) 230 Cal.App.4th 771, 775; *People v. Severance* (2006) 138 Cal.App.4th 305, 314-318; *Singleton v. Ayers* (C.D. Cal. Oct. 20, 2011, No. CV 06-3877 SJO(JC).) 2011 U.S. Dist. Lexis 145793, pp. \*\*58-69; *Severance v. Evans* (E.D. Cal. June 17, 2009, No. CIV S-06-1964 FCD KJM P) 2009 U.S. Dist. Lexis 50944, pp. \*\*14-23.)

Defendant claims these cases were wrongly decided. He argues that the cases are based on the flawed premise that a trial court may direct a sanity verdict because the defendant has the burden of proof on that affirmative defense. He argues that the assignment of the burden of proof has nothing to do with the core issue of who determines the factual issue of sanity. Defendant asserts that the issue of sanity must always be determined by the jury because section 25, subdivision (b) and section 1026, subdivision (a) assign that factual question to the jury and no statute authorizes a trial court to direct sanity verdicts.

These same claims have been considered by other courts and rejected. (E.g., *People v. Severance, supra,* 138 Cal.App.4th at p. 316; *Severance v. Evans, supra,* 2009 U.S. Dist. Lexis 50944, pp. \*\*16-21.) The statutes cited by defendant provide generally that the issue of sanity shall be tried before a jury but do "not purport to require the issue of sanity to be submitted to a jury under all circumstances, even when the defendant has not offered substantial evidence of insanity" (*Severance v. Evans, supra,* at p. \*21) or, as here, no evidence whatsoever. "Like any issue that is usually treated as one of fact, the issue of a defendant's sanity can become one of law in the proper circumstances." (*People v. Severance, supra,* at p. 316.) We follow established precedent in concluding that the trial court did not violate defendant's due process and jury trial rights by

7

directing a verdict on the sanity issue. It is also clear that any error in directing the verdict is without prejudice as the jury could have made no other finding given the total absence of evidence. There is also no basis to find that counsel was ineffective in failing to offer evidence, as no evidence of legal insanity appears in the record. The psychiatric reports are consistent in concluding that defendant was not legally insane at the time of the crimes.

3. *Sentencing.*

Defendant maintains that his sentence violates the constitutional prohibition against cruel and unusual punishment and denies substantive due process. (U.S. Const., 8th & 14 Amends.) The Eighth Amendment bars punishment that is excessive in relation to the crime committed. (*Coker v. Georgia* (1977) 433 U.S. 584, 592.) "[A] punishment is 'excessive' and unconstitutional if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." (*Ibid.*) Defendant rests his argument on the first element. He relies upon a concurring opinion to argue that any sentence in excess of life imprisonment is irrational and serves no legitimate purpose; "a sentence that no human being could conceivably complete serves no rational legislative purpose under either a retributive or a utilitarian theory of punishment." (*People v. Deloza* (1998) 18 Cal.4th 585, 601 (conc. opn. of Mosk, J.) [criticizing "multicentury sentences"].)

However much we may agree with the views of Justice Mosk, a concurring opinion has "no controlling weight" or precedential value. (*People v. Ceballos* (1974) 12 Cal.3d 470, 483.) Instead, weight must be given to the many cases holding that sentences exceeding human life expectancy do not constitute cruel and unusual punishment. (See, e.g., *People v. Byrd* (2001) 89 Cal.App.4th 1373, 1382 [115 years plus 444 years to life]; *People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1134-1137 [375 years to life plus 53 years]; *People v. Wallace* (1993) 14 Cal.App.4th 651, 666-667 [283 years eight months sentence]; *People v. Bestelmeyer* (1985) 166 Cal.App.3d 520, 532 [129 years].) In *Byrd*,

the court stated: "In our view, it is immaterial that defendant cannot serve his sentence during his lifetime. In practical effect, he is in no different position than a defendant who has received a sentence of life without possibility of parole: he will be in prison all his life." (*Byrd, supra,* 89 Cal.App.4th at p. 1383.) "[I]mposition of a sentence of life without possibility of parole in an appropriate case does not constitute cruel or unusual punishment under either our state Constitution [citation] or the federal Constitution." (*Ibid.*) *Byrd* discerned a legitimate purpose for a sentence in excess of a human life span. A long sentence of this nature "serves valid penological purposes: it unmistakably reflects society's condemnation of defendant's conduct and it provides a strong psychological deterrent to those who would consider engaging in that sort of conduct in the future." (*Ibid.*) Defendant's sentence violates neither the state nor federal ban on cruel and unusual punishment, nor denies due process.

**Disposition**

The judgment is affirmed.


_____
Pollak, J.


We concur:


_____
McGuiness, P. J.


_____
Siggins, J.

9